IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

The Village at Blacklick Creek
Condominium Association,

                 Case No. 2:24-cv-135

    Plaintiff,

v.                 Judge Graham

Greater New York Insurance Co.,      Magistrate Judge Deavers

    Defendant.

Opinion and Order

    Plaintiff The Village at Blacklick Creek Condominium Association is a non-profit corporation representing multiple residential units in a community in Reynoldsburg, Ohio.  Plaintiff held a building and property insurance policy with defendant Greater New York Insurance Company ("GNY").  Plaintiff alleges that a storm caused wind and hail damage to the units at The Village and that, because GNY denied its claim for coverage, it is entitled under the Policy to have appraisers resolve the parties' dispute over the amount of loss caused by the storm.  This matter is before the Court on plaintiff's motion to compel appraisal and stay litigation, which the Court grants for the reasons stated below.

**I.  Background**

    The Policy issued by GNY provides coverage for physical loss or damage to covered property. *See* Doc. 24-2 at PAGEID 936 (Condominium Association Coverage Form, Part A).  Damage caused by hail or wind is covered under the Policy.  *See id.* at PAGEID 956 (Causes of Loss – Special Form, Part A, providing generally for coverage unless loss is due to an excluded cause).  Excluded from coverage is loss or damage resulting from wear and tear or deterioration.  *See id.* at PAGEID 958 (Causes of Loss – Special Form, Part B.2.d(1), (2)).

    Plaintiff maintains that on May 3, 2022 a severe storm caused over $1.3 million in wind and hail damage to about 15 residential units and a clubhouse at The Village.  *See* Doc. 14-4 at PAGEID 532–33.  The alleged damage is primarily to the roofs of the buildings.  Plaintiff filed an insurance claim on August 9, 2022.  GNY investigated the claim and denied it on October 20, 2022.  GNY took

the position that the units were not damaged by wind or hail on May 3, 2022, and that the condition of the roofs was the result of wear and tear or deterioration. *See* Doc. 14-4 at PAGEID 563; *see also* Doc. 10 at PAGEID 39, ¶ 6 (GNY's finding that the storm's winds were not of sufficient speed to cause damage and its hail was not of sufficient size to cause damage).

In January 2023 plaintiff asked GNY to reconsider its denial of coverage, and plaintiff submitted additional materials in support of its assertion that the storm caused damage to the buildings. *See* Doc. 15-2. GNY responded that it stood by its denial of coverage and its conclusion that the storm did not damage the units. *See* Doc. 15-3.

In June 2023, legal counsel for plaintiff notified GNY that plaintiff was now claiming a storm occurring on May 21, 2022 caused the damage. Plaintiff asked GNY to reconsider its denial of coverage in light of the May 21 event.[1] *See* Doc. 15-4. GNY agreed to conduct a re-inspection. *See* Doc. 15-5. On September 1, 2023, GNY notified plaintiff that it stood by its denial of coverage. *See* Doc. 15-7 at PAGEID 678 (outlining the findings of GNY's re-inspection, including that no wind damage was observed and the hail reported on May 21, 2022 "was not sufficient in mass/magnitude to impart damage to the roofs").

On September 14, 2023, plaintiff submitted a notice to GNY that it was invoking the appraisal provision of the Policy. *See* Doc. 14-4 at PAGEID 566. The Policy provides:

> 2. Appraisal
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>   a. Pay its chosen appraiser; and
>   b. Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal, we will still retain our right to deny the claim.

Doc. 24-2 at PAGEID 945 (Condominium Association Coverage Form, Part E.2).

---

[1] Plaintiff's complaint in this action has returned to the position that a storm on May 3, 2022 is what damaged the units. *See* Doc. 1, ¶¶ 3, 22, 28.

2

On October 12, 2023, GNY rejected plaintiff's demand for appraisal. *See* Doc. 14-5 at PAGEID 572.

## II. Discussion

### A. Summary of the Dispute

Plaintiff filed this action in diversity, alleging that GNY breached the Policy by failing to cover the alleged loss from the May 3, 2022 storm and by failing to abide by the appraisal provision. Plaintiff seeks a declaration of its rights under the Policy. *See* O.R.C. § 2721.03 (providing a legal cause of action for contractual rights to be determined and declared by a court).

Plaintiff has moved to compel appraisal and to stay litigation pending the outcome of the appraisal process. The parties agree on what the appraisal provision says, but they dispute what it means. The crux of the issue is whether the parties have disagreed "on the amount of loss." If so, plaintiff has a contractual right to invoke the appraisal process. If not, then plaintiff has no such right.

In plaintiff's view, the parties' dispute goes to the amount of loss – with plaintiff asserting that the May 3, 2022 storm caused $1.3 million in damage and GNY maintaining that it caused $0 in damage. But in GNY's view, the parties' disagreement is really a coverage dispute over the cause of the condition of the roofs – with plaintiff maintaining that it is the result of the storm and GNY attributing it to wear and tear. GNY emphasizes that this is not a situation where it has conceded that the May 3 storm caused some damage, leaving the parties to dispute only the dollar amount. Plaintiff counters that the causation issue is necessarily intertwined in the phrase "amount of loss," such that the scope of the appraisers' authority is to determine the amount of loss, if any, caused by the covered event.

### B. Ohio Federal Courts Have Reached Conflicting Outcomes

Courts nationwide have addressed this issue with mixed opinions. *See generally* Ashley Smith, Comment, *Property Insurance Appraisal: Is Determining Causation Essential to Evaluating the Amount of Loss*, 2012 J. Disp. Resol. 591. The only courts in Ohio to consider the issue have been federal courts. *See Olson v. State Farm Fire & Cas. Co.,* No. 1:23-CV-189, 2024 WL 4343033, at *2 (S.D. Ohio Sept. 30, 2024) (observing that "no Ohio decision has settled the issue of what is meant by 'amount of loss'"); *Westview Vill. v. State Farm Fire & Cas. Co.*, No. 1:22-CV-0549, 2022 WL 3584263, at *2 (N.D. Ohio

3

Aug. 22, 2022) ("Ohio has not squarely addressed whether appraisers may determine damages' causes when setting the amount of loss.").

At least two Ohio federal courts have found a clean distinction between the initial issue of the existence of a covered loss and the issue of the loss amount. As one court put it, in order to trigger the appraisal provision "there must be agreement that some amount is covered in the first instance." *Saunders v. Auto-Owners Mut. Ins. Co.*, No. 3:22 CV 18, 2022 WL 19927692, at *1–2 (N.D. Ohio June 23, 2022) ("First things first: Is there coverage? Then: If so, how much is owed?"); *see also Woodrun Place Unit Owners' Assoc. v. Greater N.Y. Ins. Cos.*, No. 2:23-cv-4050 (May 2, 2024 S.D. Ohio) (Watson, J.) (distinguishing between disputes over the existence of a covered loss and disputes over the value of an agreed-upon loss). Underpinning this reasoning is that the first issue to be resolved must be causation – wear and tear is excluded, but storm damage is not. If the insurer denies coverage because it believes the claimed damage results from wear and tear, then the dispute concerns coverage, not loss amount.

Other Ohio federal courts have taken a broader view, holding that a dispute over whether a storm caused property damage is a factual disagreement on the extent of loss (whether significant, minimal, or none) and that the dispute should be resolved by an appraisal panel. *See Eagle Highland Owners Ass'n v. State Farm Fire & Cas. Co.*, No. 3:23-CV-19, 2023 WL 8598329, at *1 (S.D. Ohio Dec. 12, 2023) (Newman, J.); *Westview Vill.*, 2022 WL 3584263, at *3. This view relies on the Ohio Supreme Court's decision in *Saba v. Homeland Ins. Co.*, where the policy provided for referral to appraisers when the parties disagreed on "the amount of loss." *Id.*, 159 Ohio St. 237, 238, 112 N.E.2d 1, 2 (Ohio 1953). In holding that appraisal provisions are valid and enforceable, the Ohio Supreme Court stated, "'Their purpose is to provide a plain, speedy, inexpensive and just determination of **the extent of the loss**, and insured has the right to have the amount of the loss settled as provided in the arbitration clause of his policy even though insurer denies liability or refuses to participate in the arbitration.'" *Id.*, 159 Ohio St. at 240–41, 112 N.E.2d at 3 (quoting 45 C.J.S., Insurance, § 1110, p. 1353) (emphasis added). In *Westview Village*, the court relied on *Saba* to conclude that allowing appraisers to decide the extent of loss inherently required them "to determine causation" and "to separate covered damage

4

from uncovered damage." *Westview Vill.*, 2022 WL 3584263, at *2 (also citing non-Ohio case law reaching the same conclusion).

### C. The Court Finds that the Parties' Dispute Falls Within the Appraisal Provision

Insurance policies are interpreted under the same rules which apply to other types of contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102 (Ohio 1992). The parties' objectives and intent should be given effect through a reasonable construction of the policy's provisions and through giving words and phrases their plain and commonly-accepted meaning. *Id.* Where a policy's language is clear and unambiguous, a court should enforce it. *Id.* If a provision is ambiguous, the court construes the ambiguous language in favor of the insured. *Faruque v. Provident Life & Acc. Ins. Co.*, 31 Ohio St. 3d 34, 38, 508 N.E.2d 949, 952 (Ohio 1987).

The Court starts, as it must, with the language of the Policy's appraisal provision. The appraisal process can be triggered only if the parties disagree "on the amount of loss." At first blush, GNY's argument that the appraisal provision does not cover disagreements over the cause of loss has some appeal. Cause and amount, after all, are not the same thing in everyday usage. *See* Oxford English Dictionary (2d ed. 1989) (defining "cause" as "that which gives rise to any action, phenomenon, or condition"; defining "loss" as including "ruin, destruction" and the "[d]iminution of one's possessions").

But it cannot be ignored that the Court is interpreting an insurance contract. Noting the rule under Ohio law that words in a contract be given their "common and ordinary" meaning, *see Olmstead v. Lumbermens Mut. Ins. Co.*, 22 Ohio St.2d 212, 259 N.E.2d 123, 126 (Ohio 1970), the Sixth Circuit commented on the challenge of applying the rule to insurance contracts:

> There is indeed nothing common about the language of insurance contracts. Then again, there is nothing common about the task at hand—capturing risk and what to pay for it, pricing unknowable future perils in a fair and predictable way. This is a specialized field of language, and aptly so. Hence the 26 pages and many words, sometimes overlapping words, needed to complete this contract. While there may be nothing common about the words found in insurance contracts, they often generate an ordinary meaning when anchored in the special context in which they are written.

*Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401 (6th Cir. 2021).

In the insurance context, "loss" is the "amount of financial detriment **caused** by an insured person's death or an insured property's damage, for which the insurer becomes liable." Black's Law

5

Dictionary (11th ed. 2019) (emphasis added). Another source defines "loss" in the insurance context as "the amount of an insured's financial detriment by death or damage *that the insurer is liable for*." Merriam-Webster's Collegiate Dictionary 736 (11th ed. 2003) ( (emphasis added). Thus, the concept of causation is built into the meaning of loss. As one court explained (discussing the definitions given in Black's Law Dictionary and Merriam-Webster's Collegiate Dictionary):

> [I]n the insurance context, an appraiser's assessment of the "amount of loss" necessarily includes a determination of the cause of the loss, and the amount it would cost to repair that loss. . . . These definitions state that as a general matter the term "loss" refers to damages for which the insurer is responsible. Thus, the dictionary definitions of "loss" for purposes of insurance expressly contemplate an element of causation. By extension, an appraiser's duty to determine the "amount of loss" requires the appraiser to determine causation.

*Quade v. Secura Ins.*, 814 N.W.2d 703, 706 (Minn. 2012).

Many courts have reached the same conclusion: "causation is an ingredient of loss." *BonBeck Parker, LLC v. Travelers Indem. Co. of Am.*, 14 F.4th 1169, 1178 (10th Cir. 2021) (citing cases). *See, e.g.*, *Axis Surplus Ins. Co. v. Condor Corp.*, 19 F.4th 1062, 1064 (8th Cir. 2021) (following Minnesota law); *Westview Vill.*, 2022 WL 3584263, at *3; *Haddock v. State Farm Fire & Cas. Co.*, 638 F.Supp.3d 748, 757–59 (E.D. Mich. 2022) (citing cases); *Motorists Mut. Ins. Co. v. Post*, No. CIV.A. 04-487-JBC, 2005 WL 2674987, at *3 (E.D. Ky. Oct. 20, 2005); *CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F.Supp.2d 259, 265 (D. Del. 2000) ("[T]he definition provided by Black's expressly includes a causation element."); *N. Glenn Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 854 N.W.2d 67, 71 (Iowa Ct. App. 2014) ("Causation is an integral part of the definition of loss, without consideration of which the appraisers cannot perform their assigned function."). *But see Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 392 (Ala. 2007) (holding that appraisers can evaluate "the monetary value of the property damage" but not the cause of the damage).

Based on the authority above, this Court is persuaded that causation is part of the meaning of loss in the insurance context. But the Court's textual interpretation must align with how the state's highest court would be anticipated to rule on the matter. *See Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008). In the absence of any Ohio case law directly on point, this Court agrees with *Westview Village* that the holding in *Saba* is the best available indication of how the Ohio Supreme Court would rule. *See Westview Vill.*, 2022 WL 3584263, at *2.

In *Saba* the appraisal provision, like the one here, applied when the parties disagreed over the amount of loss. The Ohio Supreme Court found that this language expressed the parties' "unambiguous" intent to have appraisers determine the "extent of loss" even when the "insurer denies liability." 159 Ohio St. at 240–41, 112 N.E.2d at 3. Although the court in *Saba* did not further define "extent of loss," other courts have explained that when a "dispute involves the extent of damages and the amount of loss, it simply cannot be characterized as a scope-of-coverage issue" because causation and amount of loss are "inextricably intertwined." *Hahn v. Allstate Ins. Co.*, 15 A.3d 1026, 1030 (R.I. 2011) (internal quotation marks omitted). In other words, appraisers being tasked to determine the extent of loss naturally must deal with causation issues by separating covered damage from uncovered damage. *See Westview Vill.*, 2022 WL 3584263, at *3 ("[B]ecause *Saba* instructs that appraisers may determine the extent of damages, they may also consider the cause of those damages."); *see also Williamson v. Chubb Indem. Ins. Co.*, No. 11-CV-6476, 2012 WL 760838, at *4 (E.D. Pa. Mar. 8, 2012) ("[W]hen the parties merely disagree over the extent of damage or whether a covered peril is the cause of certain damage, that is a dispute regarding the amount of loss and is proper for appraisal."); *Coates v. Erie Ins. Exch.*, 79 Va. Cir. 440, 445 (Va. Cir. Ct. 2009) ("[T]he question of what must be replaced in order to adequately repair the damage caused by the admittedly covered Event in this case is not a question of coverage. Rather, it is a question of the extent or 'amount of loss,' and is therefore appropriate for appraisal.").

In *Saba* the Ohio Supreme Court also emphasized the importance of protecting the insured's "valuable right" to a prompt and inexpensive determination of loss though appraisal. 159 Ohio St. at 241, 112 N.E.2d at 3 ("The plaintiff was led to believe that he was purchasing policies giving him the right to an appraisal and a prompt settlement of his loss so he would have the insurance money with which to reconstruct his building without the expense and delay incident to litigation. Obviously this is a valuable right which he should not be denied."). The Court thus believes that the Ohio Supreme Court would interpret the appraisal provision so as to give full meaning to the rights purchased by the insured and would reject an approach by which the insurer could undermine the insured's right simply by disputing causation in whole or in part. *See BonBeck Parker*, 14 F.4th at 1181 ("Removing causation from the appraisal process frustrates that purpose . . . ."); *Hahn*, 15 A.3d at 1030 (stating that to

7

separate causation from the amount of loss "would frustrate the purpose of the appraisal") (internal quotation marks omitted). On this point, the Texas Supreme Court explained:

> The same is true when the causation question involves separating loss due to a covered event from a property's pre-existing condition. Wear and tear is excluded in most property policies (including this one) because it occurs in every case. If State Farm is correct that appraisers can never allocate damages between covered and excluded perils, then appraisals can never assess hail damage unless a roof is brand new. That would render appraisal clauses largely inoperative, a construction we must avoid.

*State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 892–93 (Tex. 2009) (footnotes omitted). *See also Philadelphia Indem. Ins. Co. v. WE Pebble Point*, 44 F.Supp.3d 813, 817–18 (S.D. Ind. 2014) ("To hold otherwise would be to say that an appraisal is never in order unless there is only one conceivable cause of damage . . . ."); *Quade*, 814 N.W.2d at 707 ("In this case, the causation question involves separating loss due to a covered event from a property's preexisting condition. Adopting the Quades' interpretation would render appraisal clauses inoperative in most situations, and that result is in direct conflict with the public policy behind the appraisal process and the fact that we have repeatedly encouraged its use in Minnesota."); *CIGNA*, 110 F.Supp.2d at 269 ("If the Court were to curtail the appraisers['] authority to include only dollar value assessments without regard for whether the property was damaged as a result of the fire, the Court would be reserving a plethora of detailed damage assessments for judicial review, thereby debunking the purpose of appraisal which is to minimize the need for judicial intervention.").

This result also serves the reasonable and practical expectations of the parties. It allows appraisers to make factual determinations as to the extent of damage but reserves to GNY the right to deny the claim on other grounds, as the last sentence of the appraisal provision states. *See BonBeck Parker*, 14 F.4th at 1179–80 (finding that an appraisal provision is given its intended meaning by committing to appraisers the factual determination of "how much hail damage occurred" and reserving to the court any decision on legal defenses to coverage). Insurers can go to court for "legal determinations as to the categories of coverage" and other legal defenses, while "appraisers make factual findings as to whether specific damage fits into those categories or not." *Cox v. State Farm Fire & Cas. Co.*, No. 19-12235, 2020 WL 1888824, at *7 (E.D. Mich. Apr. 16, 2020); *accord Axis Surplus*, 19 F.4th at 1064 (holding that coverage issues are for the court but "separating loss due to a covered

event" from a "property's preexisting condition" is "one for the appraiser") (internal quotation marks omitted); *Westview Vill.*, 2022 WL 3584263, at *4; *Est. of Mattingly v. State Auto Prop. & Cas. Ins. Co.*, No. 3:21-CV-274-RGJ, 2023 WL 320004, at *2 (W.D. Ky. Jan. 19, 2023) ("Whether that hailstorm actually caused the claimed property damage is a question of fact [for the appraisers], not a legal question on the scope of insurance coverage."); *Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*, 913 N.W.2d 80, 91 (Iowa 2018) ("Coverage questions are for the court. . . . But we conclude factual causation issues may be decided through the appraisal process.").

There is no dispute here that damage from wind and hail falls within a category of coverage. *See* Doc. 10 at PAGEID 32, ¶ 5 (GNY's Answer). It is within the appraisers' purview to decide what damage, if any, was caused to the units by the storm at issue and to separate such damage from any other damage or condition. *See Hunters Glen Condo. Ass'n v. State Farm Fire & Cas. Co.*, No. 3:23-CV-77, 2024 WL 1990875, at *1 (S.D. Ohio May 6, 2024) (Newman, J.); *Stonebridge at Golf Vill. Squares Condo. Ass'n v. Phoenix Ins. Co.*, No. 2:21-CV-4950, 2022 WL 7178548, at *3 (S.D. Ohio Sept. 22, 2022) (Sargus, J.) (holding that the extent of damage caused by a storm is "a factual inquiry, not a legal one. And it is a question that, in this Court's view, is best left for a full, first-hand appraisal, rather than a second-hand judicial review"); *Pebble Point*, 44 F.Supp.3d at 818 ("We agree with Pebble Point that it would be extraordinarily difficult, if not impossible, for an appraiser to determine the amount of storm damage without addressing the demarcation between 'storm damage' and 'non-storm damage.'"); *Walnut Creek*, 913 N.W.2d at 93 ("[A]ppraisers must consider what damage was caused by hail, and what damage was not, or damage with which they are unconcerned, such as normal wear and tear.").

### III. Conclusion

Accordingly, plaintiff's motion to compel appraisal (doc. 14) is GRANTED. This litigation is STAYED until the appraisal process is concluded. The parties shall file a joint status report within 30 days of the conclusion of the appraisal process and advise the Court whether any live dispute remains. Specifically, if plaintiff obtains a favorable appraisal determination, GNY must notify the Court of the

9

need to adjudicate any rights it has retained to deny the claim.

                                                  *s/ James L. Graham*
                                                  JAMES L. GRAHAM
                                                  United States District Judge

DATE: February 10, 2025